Russell E. YOUNG, Plaintiff,

v.

SOUTHERN PACIFIC TRANSPORTATION COMPANY, a corporation, and Does I through V, inclusive, Defendants.

No. C–76–396–CBR.

United States District Court,
N. D. California.

Sept. 27, 1976.

---

Boccardo, Blum, Lull, Niland & Bell, David J. Bennion, San Jose, Cal., for plaintiff.

Robert S. Bogason, San Francisco, Cal., for defendants.

## MEMORANDUM OF OPINION AND ORDER

RENFREW, District Judge.

Plaintiff seeks review of an award by Public Law Board 1160 denying his claim for reinstatement and back pay. Public Law Board 1160 is a special board of adjustment, established by agreement between Southern Pacific Transportation Company ("Southern Pacific") and plaintiff's union, United Transportation Union (Switchmen), on August 16, 1973, pursuant to Section 3 Second of the Railway Labor Act (45 U.S.C. § 153). Defendant Southern Pacific has moved for summary judgment, and hearings on the motion were held on July 22 and September 16, 1976.

From July 1950, through December 17, 1969, plaintiff was employed by Southern Pacific as a switchman. Having suffered an injury to his back while working on June 16, 1969, plaintiff requested placement on the injured board on June 17, 1969. Between June and September he underwent treatment including bed traction and physi-

cal therapy at Harkness Community Hospital in San Francisco. On September 23, 1969, he was released and certified as fit to return to work as of October 2, 1969, by a house physician. Plaintiff thereafter sought additional medical attention and did not return to work.

On November 26, 1969, defendant's Terminal Superintendent addressed a notice to plaintiff advising him that the company would conduct a formal investigation on December 11, 1969, to determine whether his absence from duty since October 2, 1969, had been unauthorized and, thus, grounds for termination of his employment. Defendant sent the notice by certified mail to the last address which plaintiff had supplied the company. Absent from his home, plaintiff did not accept delivery of the notice which was eventually returned to the company marked "unclaimed."

Subsequent to the December hearing[1] which plaintiff did not attend and at which he was not represented, he was notified by letter dated December 17, 1969, that he had been terminated for violation of Rule 810 of the Rules and Regulations of the Transportation Department of Southern Pacific which prohibits unauthorized employee absences. Thereafter, seeking reinstatement and back pay, plaintiff through his union exhausted appeal procedures and finally submitted the grievance to neutral arbitration before Public Law Board 1160. Having received written briefs from both sides, the Board found that the attempted notice was sufficient to satisfy the demands of the collective bargaining agreement and that, in failing to appear for the hearing, plaintiff waived the right to submit evidence in addition to that submitted at the hearing. The Board issued its award denying plaintiff's claim on July 28, 1974.

---

1. The transcript of the Board hearing records the date of the hearing as December 12 rather than December 11. Although he did not raise the question before the Board, plaintiff now questions the defendant's assertion that the hearing was conducted on December 11. In order to meet plaintiff's argument that the attempted notice was inadequate as it stated an erroneous hearing date, defendant obtained and has submitted to the Court a statement signed

by Ms. Nancy L. Popp who states that she took and transcribed the notes of the investigation concerning Mr. Young. Ms. Popp asserts that the investigation was conducted on December 11, 1969, and that the record date of December 12 is an error. Ms. Popp's is not a sworn statement, admissible as evidence before this Court. However, the Court notes that the union's submission stated that the investigation was held on December 11, 1969.

Plaintiff filed his complaint with this Court on February 25, 1976. He challenges the Board's decision, contending that he was wrongly discharged and that the Board failed to comply with the procedural requirements designated in the agreement creating the Board in reaching its decision. He seeks damages for past and future earnings in an amount to be determined by the Court.

Section 3 of the Railway Labor Act provides for neutral arbitration before three types of tribunals. The first is the National Railroad Adjustment Board, created by Section 3 First. The second type of arbitration panel is the "special board of adjustment" which may be established by agreement between a carrier and union, as provided by Section 3 Second, for several purposes, including the resolution of disputes otherwise referrable to the National Railroad Adjustment Board. The third type of panel, permitted by Section 3 Second, is the purely private arbitration board.

Section 3 contains three distinct provisions which grant jurisdiction in the federal courts over arbitration awards. Two relate only to awards by divisions of the National Railway Adjustment Board. Section 3 First (p) provides that "if a carrier does not comply with an order of a division of the Adjustment Board * * *", an aggrieved party may petition the district court for relief. Having received such a petition, the court is authorized either to enforce the award or set it aside on any of three specified grounds. Section 3 First (q) provides that an aggrieved employee, group of employees or carrier may petition the district court for review of an award made by a division of the Adjustment Board. Upon such petition, the court may affirm, remand, or set aside the award on any of the same three specified grounds.

The third provision granting jurisdiction to the federal courts relates to awards by special boards of adjustment, such as Public Law Board 1160. Section 3 Second provides that these awards "shall be enforcible by proceedings in the United States district court in the same manner and subject to the same provisions that apply to proceedings for enforcement of compliance with awards of the Adjustment Board." Section 3 Second does not provide for the review of such awards. Finally, the Section provides neither for the review nor the enforcement of awards by private arbitration panels.

■ Section 3 clearly distinguishes between *review,* which it allows only for awards made by divisions of the National Railroad Adjustment Board, and *enforcement,* which it allows for both National Railroad Adjustment Board and special adjustment board awards. The Court agrees with the Court of Appeals for the Seventh Circuit that Section 3 Second, on its face, "vests authority in the district courts only to enforce but not to review awards of special boards." *Brotherhood of Railway v. Special Bd. of Adj. No. 605,* 410 F.2d 520, 523 (7 Cir. 1969) (dicta). *Accord, United Transportation Union v. Indiana Harbor Belt R.R. Co.,* (No. 74–C–3149, E.D.Ill., May 15, 1975).

■ In petitioning the Court to set aside the adverse award of Public Law Board 1160 and to award him damages allegedly incurred as a result of his discharge, plaintiff asks the Court to exercise a review power which it lacks under the Railway Labor Act. Therefore, concluding that it has no jurisdiction over the subject matter of the controversy, the Court will order dismissal of the action pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure.

In reaching this conclusion, the Court recognizes that a number of federal courts have determined that Section 3 Second does authorize the district courts to review, as well as to enforce, awards made by special adjustment boards. *E. g., DiBlasi v. Baker,* 404 F.Supp. 654, 655 (D.Mass.1975); *Wisniewski v. Pittsburgh, Chartiers, and Youghiogheny Ry. Co.,* 379 F.Supp. 297 (W.D.Pa.1974), *appeal dismissed,* 511 F.2d 1397 (3 Cir. 1975); *United Transp. U. v. Pittsburgh, Chartiers, and Y. Ry. Co.,* 353 F.Supp. 1305, 1306 (W.D.Pa.1973), *appeal*

*dismissed,* 485 F.2d 683 (3 Cir. 1973); *Barrett v. Manufacturers Railway Company,* 326 F.Supp. 639, 643–644 (E.D.Mo.1971), *aff'd on other grounds,* 453 F.2d 1305 (8 Cir. 1972); *Transportation-Com. Emp. U. v. St. Louis-San Francisco R. Co.,* 296 F.Supp. 507, 508–509 (E.D.Mo.1968), *appeal dismissed,* 419 F.2d 933 (8 Cir. 1969). The Court wishes to note briefly that, even if it were to accept this interpretation of the statute, it would find plaintiff's claim without merit.

Section 3 First (q) provides three bases for judicial reversal of arbitration awards, none of which permits reexamination on the merits: failure to comply with the terms of the Railway Labor Act, lack of jurisdiction in the board to make an award, and fraud or corruption by a member of the board. Contending that the Board's decision was "wholly baseless" and citing *Brotherhood of Railroad Train. v. Central of Ga. Ry. Co.,* 415 F.2d 403, 411–412 (5 Cir. 1969), for the proposition that "an award 'without foundation in reason or fact'" is equated with an award in excess of the board's jurisdiction, plaintiff contends that his claim falls under the second statutory ground for review.[2] The Public Law Board's determination that attempted notice by certified mail to the plaintiff's last known address is sufficient to satisfy the notice requirement of the collective bargaining agreement hardly appears to be a matter outside the jurisdiction of the board. Although the collective bargaining agreement does not expressly state that attempted notice of this variety is satisfactory,[3] defendant notes that the principle was established in an earlier award of the Board and thus constitutes "law of the shop." Plaintiff presents no evidence that the decision on the notice question, or on the effect of plaintiff's failure to attend and to adduce evidence at the hearing, deviates from standard shop practice. The record does not indicate that, in making its award, Public Law Board 1160 ignored either the express terms of the collective bargaining agreement or the customary industry practices. The district courts will not review the merits of arbitration awards as long as an award appears to be based upon the applicable collective bargaining agreement or the common law of the shop. *See Rossi v. TransWorld Airlines,* 507 F.2d 404 (9 Cir. 1974), and cases cited therein. *See also Barrett v. Manufacturers Railway Company, supra,* 453 F.2d at 1307, and cases cited therein. Thus, were the Court to find that it had jurisdiction over this controversy, it

---

**2.** Plaintiff argues in part that the Board's finding that plaintiff had received notice of the hearing is unfounded. However, inasmuch as the Board found not that plaintiff had received actual notice but that actual notice was not required by the collective bargaining agreement, the Court does not address this claim.

**3.** The notice provision of the collective bargaining agreement, Article 30, Section (d), states:

"When formal investigation is to be held the employe shall be given written notice as to the specific charge, time and place, sufficiently in advance to afford him the opportunity to arrange representation and for the attendance of any desired witnesses. A telegram will be considered written notice. The Company will require the presence of all employes whose testimony may be necessary to develop all of the essential facts. In fixing time at which investigation will be held due consideration will be given to the need of rest by employes."

In oral argument, plaintiff's counsel conceded that the attempted notice might ordinarily satisfy the collective bargaining agreement. He argued, however, that such notice is insufficient in this case, because the letter was mailed approximately one week preceding plaintiff's scheduled vacation. Although a Xeroxed copy of the envelope indicates the notice was mailed November 28, and plaintiff does not allege that he left town until December 3, counsel for plaintiff assumes that the letter—forwarded from plaintiff's Albany, California street address which he had supplied the company to an Albany post office box which he had recently acquired—did not arrive until after plaintiff had left town. The Court notes that, except for his own assertion, plaintiff has not supported the contention that he was on vacation or out of town from December 3 through December 22; in fact, he earlier explained that he was on sick leave at the time. However, even assuming that plaintiff was on vacation, the Court fails to see the argument's relevance, particularly in the absence of any showing of bad faith on the part of the company.

would grant defendant's motion for summary judgment.[4]

Accordingly, IT IS HEREBY ORDERED that the complaint and the action therein are dismissed pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure and the parties shall bear their respective costs.

In the alternative, IT IS HEREBY ORDERED that defendant's motion for summary judgment is granted and the parties shall bear their respective costs.

IT IS HEREBY FURTHER ORDERED that counsel for defendant shall promptly prepare an appropriate form of judgment, obtain approval of counsel for plaintiff as to form, and submit it to the Court for execution.

---

**4.** At the September 16th hearing, plaintiff's counsel argued that the allegedly deficient notice deprived plaintiff of his constitutional right to due process. Because plaintiff did not raise the constitutional issue in his complaint or written submissions, the Court declines to address the issue. Although he alluded to due process in his complaint, he characterized the lack of actual notice as violative of the collective bargaining agreement, rather than of the federal Constitution. Although he referred once to the constitutional requirement of due process in his memorandum in opposition to the motion for summary judgment, filed August 5, 1976, he advanced the argument to suggest the facility which the Court would have in addressing a notice requirement in another context. His counsel made no constitutional argument and cited no constitutional precedent. In refusing to address the question, the Court does not suggest that it would find such a claim meritorious.