Frank DIAN

v.

UNITED STEELWORKERS OF AMERICA and Reading Metals Refining Corp., Division of Reading Industries, Inc., also known as Reading Metals Refining Co. or as Reading Metals Refining Corporation.

Civ. A. No. 77–346.

United States District Court, E. D. Pennsylvania.

March 17, 1980.

Paul R. Ober, Reading, Pa., for plaintiff.

Joseph Lurie, Philadelphia, Pa., Robert T. Miller, Reading, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

When plaintiff's employer, defendant Reading Metals Refining Corporation

(Reading Metals), suspended and later discharged him in January 1975, he complained to the grievance committeeman of defendant United Steelworkers of America (union), to which he belonged, that Reading Metals failed to notify him of the charges against him, that he had merely refused to take a work assignment and had requested to take sick leave before he left the work area, and that the Reading Metals penalty of discharge was discriminatory because the company had not previously treated other employees accused of the same offense similarly.[1] Subsequently, the union conferred with Reading Metals about the matter and, according to plaintiff, acted in bad faith during negotiations with Reading Metals by camouflaging its inadequate and insincere efforts behind a guise of fairness and fidelity. Actually, plaintiff alleges, because he had supported opposing candidates in union elections and had expressed opposition to handling of grievances and to certain agreements between the union and Reading Metals respecting job status and other union policies, the officials of the union conspired with Reading Metals and clandestinely agreed not to take plaintiff's grievance to arbitration in exchange for reinstatement of another employee who had been accused of the same offense.

Plaintiff also complains that the union failed to require Reading Metals to follow the usual grievance procedure established by the collective bargaining agreement by not demanding Step One or Step Two conferences on the issue of plaintiff's discharge;[2] that the union representatives neither demanded nor obtained from Reading Metals a "Statement of Offense" prior to the hearings on plaintiff's discharge; that this omission obstructed plaintiff's procurement of witnesses and preparation of his defense; that union representatives failed to meet with and discuss plaintiff's case with him, except for a few minutes before each hearing, rendered inadequate advice during conferences and lacked sufficient information to rebut the company's charges because it had not obtained the Statement of Offense; that union staff representatives arbitrarily refused to appeal plaintiff's discharge to Step Four arbitration under the grievance procedure and thus precluded plaintiff from a full and impartial hearing of his case.[3] All of these acts and omissions, urges plaintiff, constituted a breach of the union's duty of fair representation.

Plaintiff seeks compensatory as well as punitive damages. The union, now moving to strike, contends that punitive damages are unavailable to plaintiff under the decision of *International Brotherhood of Elec-*

1. For present purposes we accept as true the allegations in plaintiff's complaint.

2. On October 1, 1972, Reading Metals and the union entered into a collective bargaining agreement which covered plaintiff and was in effect at all relevant times.

   Article XIII, § 13–3 of this agreement provided that

   [t]he first step in solving a grievance problem is for the aggrieved and the Shop Steward, to take the matter up with the Foreman of the Department. The Foreman shall be given one (1) twenty-four (24) hour work day in which to render his decision on the grievance to the Shop Steward. If the matter is not satisfactorily settled it shall be reduced in writing and referred to Step Two.

   Appeal to Step Two must be made not later than five (5) working days from the date of the Foreman's answer in Step One.

   If the Foreman's answer is not satisfactory to the Union, the grievance shall be presented by the Grievance Committee to a representative of the Company who has authority to make decisions final and binding upon the Company in Step Two. The decision of the Company's representative in this Step shall be noted on the written grievance form and shall be furnished to the Chairman of the Grievance Committee within three (3) working days from the date of the meeting in which the grievance is heard in Step Two.

3. Step Four of the collective bargaining agreement provided for arbitration. Specifically, § 13–3 provided that

   [a]ny differences, disputes, claims, or grievance cases arising out of, or relating to this Agreement which have not been satisfactorily settled in accordance with the foregoing procedure, may be submitted by either party to Arbitration under the Voluntary Labor Arbitration Rules then obtaining of the American Arbitration Association . . . ..

*trical Workers v. Foust*,[4] which held that punitive damages may not be assessed against a union which breaches its duty of fair representation by failing properly to pursue a grievance. Plaintiff contends that *Foust*, decided under the Railway Labor Act, 45 U.S.C. § 151 et seq., does not apply to his action, brought under the Labor Management Relations Act, 29 U.S.C. § 185. Whether plaintiff may claim punitive damages under the latter act is the issue on which the instant motion turns.

In determining that the Railway Labor Act did not allow a plaintiff to claim punitive damages, the *Foust* court scrutinized the policies giving impetus to the Railway Labor Act and the private right of action now known as fair representation suits judicially implied therefrom. National labor policy, which included protecting the collective bargaining system by maintaining the efficacy of unions as collective bargaining agents, permitting unions wide discretion in handling disputes in order to promote settlement, to avoid processing unmeritorious claims and to bolster employer confidence in the union, and preserving the essentially remedial, not punitive, nature of this legislation, which seeks to "make the injured employee whole",[5] received close attention from the Court. This strong emphasis upon general national labor policy as well as the specific labor policies promoted by the Railway Labor Act suggests a similarly exacting scrutiny of the Labor Management Relations Act to ascertain what policies this latter act seeks to promote, whether these policies share common goals with the Railway Labor Act, and whether the common features, if any, support a conclusion similar or identical to *Foust*.

■ Even the shortest history of fair representation suits amply demonstrates the consanguinity between the Railway Labor Act and the Labor Management Relations Act. The Supreme Court first implied a labor union's duty to represent every member of the collective bargaining unit during the negotiation, administration and enforcement of the collective bargaining agreement "without hostile discrimination fairly, impartially, and in good faith" in the Railway Labor Act.[6] Later the Court implied a correlative duty in the Labor Management Relations Act.[7] Fashioning appropriate remedies in light of Congress' silence on the matter required candid acknowledgement of the primary purposes and policies underpinning these acts. The "overarching goal" is "facilitat[ing] collective bargaining and to achiev[ing] industrial peace" under both the Railway Labor Act[8] and the Labor Management Relations Act.[9] More specifically, the acts promote prompt determination of labor disputes,[10] self-adjustment by

4. 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979).

5. *Id.* at 49, 99 S.Ct. at 2126.

6. *Steele v. Louisville & Nashville Railroad*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944). *See also Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) and *Tunstall v. Brotherhood of Locomotive Firemen and Enginemen*, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187 (1944).

7. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). *See also Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964), *Ford Motor Co. v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953), and *Griesemer v. Retail Store Employees Union Local 1393*, 482 F.Supp. 312, 315 n. 7 (E.D.Pa. 1980).

8. *International Brotherhood of Electrical Workers v. Foust*, 442 U.S. at 46, 47, 99 S.Ct. at 2125, *International Association of Machinists v. Street*, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961); *Steele v. Louisville & Nashville Railroad, supra.*

9. *Vaca v. Sipes, supra, Fibreboard Paper Products Corp. v. National Labor Relations Board*, 379 U.S. 203, 85 S.Ct. 398, 13 L.Ed.2d 223 (1964), *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). These acts must be construed in light of the national labor policy of which they form a part. *Emporium Capwell Co. v. Western Addition Community Organization*, 420 U.S. 50, 95 S.Ct. 977, 43 L.Ed.2d 12 (1975).

10. *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. Scofield*, 382 U.S. 205, 86 S.Ct. 373, 15 L.Ed.2d 272 (1965) (Labor Management Relations Act); *Pyzynski v. New York Central Railroad*, 421 F.2d 854 (2d Cir. 1970) (Railway Labor Act).

the parties as the preferred means of resolving industrial disputes,[11] protection of employee's self-organization efforts and the process of collective bargaining from disruption or interference by employers,[12] peaceful settlement of industrial disputes,[13] and elimination of unequal treatment of employees and the consequent discontent engendered thereby.[14]

In addition to sharing common policy goals, many other similarities between the acts exist. For example, both acts are essentially remedial in nature.[15] Under both acts damages sustained by an employee are apportioned between the union and employer according to the contribution each made to the employee's loss,[16] and under both acts employees may resort to peaceful self-help measures. That is, employees enjoy the right to engage in primary strikes and to picket under certain circumstances.[17]

Perhaps even more persuasive are the common features shared by fair representation suits commenced under these acts. Basically, these actions seek to compensate employees for injuries caused by violations of their rights by employers and unions. Judicial redress seeks to make the injured

11. *H. K. Porter Co. v. National Labor Relations Board*, 397 U.S. 99, 90 S.Ct. 821, 25 L.Ed.2d 146 (1970), *Carey v. Westinghouse Electric Corp.*, 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964), *General Drivers, Warehousemen and Helpers, Local Union No. 89 v. Riss & Co.*, 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963), *Drake Bakeries, Inc. v. Local 50, American Bakery and Confectionary Workers, International*, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962) (Labor Management Relations Act); *Detroit & Toledo Shore Line Railroad v. United Transportation Union*, 396 U.S. 142, 90 S.Ct. 294, 24 L.Ed.2d 325 (1969), *International Association of Machinists v. Street, supra* (Railway Labor Act).

12. *National Labor Relations Board v. Magnavox Co. of Tennessee*, 415 U.S. 322, 94 S.Ct. 1099, 39 L.Ed.2d 358 (1974), *American Ship Building Co. v. National Labor Relations Board*, 380 U.S. 300, 85 S.Ct. 955, 13 L.Ed.2d 855 (1965) (Labor Management Relations Act); *Detroit & Toledo Shore Line Railroad v. United Transportation Union, supra, California v. Taylor*, 353 U.S. 553, 77 S.Ct. 1037, 1 L.Ed.2d 1034 (1957), *Virginian Railway v. System Federation No. 40, Railway Employees Department of the American Federation of Labor*, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937) (Railway Labor Act).

13. *National Labor Relations Board v. Burns International Security Services, Inc.*, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972), *Fibreboard Paper Products Corp. v. National Labor Relations Board, supra, Carey v. Westinghouse Electric Corp., supra* (Labor Management Relations Act); *Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees v. Association for the Benefit of Non-Contract Employees No. 138*, 380 U.S. 650, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965), *Union Pacific Railroad v. Price*, 360 U.S. 601, 79 S.Ct. 1351, 3 L.Ed.2d 1460 (1959), *Brotherhood of Railway Trainmen v. Chicago River & Indiana Railroad*, 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957), *Virginian Railway v. System Federation No. 40, Railway Employees Department of the American Federation of Labor, supra* (Railway Labor Act).

14. *Emporium Capwell Co. v. Western Addition Community Organization, supra, Alexander v. Gardner Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), *American Ship Building Co. v. National Labor Relations Board, supra* (Labor Management Relations Act); *Pennsylvania Railroad v. Day*, 360 U.S. 548, 79 S.Ct. 1322, 3 L.Ed.2d 1422 (1959), *California v. Taylor, supra* (Railway Labor Act).

15. *Vaca v. Sipes, supra, Carpenters Local 60 v. National Labor Relations Board*, 365 U.S. 651, 87 S.Ct. 903, 17 L.Ed.2d 842 (1961) (Labor Management Relations Act); *International Association of Machinists v. Street, supra, Virginian Railway v. System Federation No. 40, Railway Employees Department of the American Federation of Labor, supra* (Railway Labor Act).

16. *Vaca v. Sipes, supra* (Labor Management Relations Act); *International Brotherhood of Electrical Workers v. Foust, supra, Czosek v. O'Mara*, 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970) (Railway Labor Act).

17. *United Steelworkers of America v. National Labor Relations Board*, 376 U.S. 492, 84 S.Ct. 899, 11 L.Ed.2d 863 (1964), *Garner v. Teamsters, Chauffeurs and Helpers, Local Union No. 776*, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953) (Labor Management Relations Act); *Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 89 S.Ct. 1109, 22 L.Ed.2d 344 (1969), *Brotherhood of Locomotive Engineers v. Baltimore & Ohio Railroad*, 372 U.S. 284, 83 S.Ct. 691, 9 L.Ed.2d 759 (1963) (Railway Labor Act).

employee "whole".[18] The Supreme Court also extended the union's duty of fair representation to the process of resolving disputes under existing collective bargaining agreements as well as negotiation of new ones under both acts [19] and interpreted them to allow an employee to sue the union directly,[20] a union to sue the employer,[21] and an employee to sue both the union and employer.[22] The duty to exhaust internal union remedies prior to instituting suit [23] has been recognized under both acts,[24] which harmonize establishment of a terminal procedure for resolution of grievances with implying a proscription against strikes as an alternative.[25] Judicial interpretation of these acts limited the reviewability of the decision of the National Railroad Adjustment Board and an arbitrator [26] and allowed granting an injunction against a strike under some circumstances.[27] The Court also sanctioned award of damages against unions and employers who have violated employees' rights.[28]

**18.** *Vaca v. Sipes, supra* (Labor Management Relations Act); *International Brotherhood of Electrical Workers v. Foust, supra, Steele v. Louisville & Nashville Railroad, supra* (Railway Labor Act).

**19.** *Vaca v. Sipes, supra, Humphrey v. Moore, supra, Syres v. Oil Workers International Union*, 350 U.S. 892, 76 S.Ct. 152, 100 L.Ed. 785 (Labor Management Relations Act); *Conley v. Gibson, supra, Steele v. Louisville & Nashville Railroad, supra* (Railway Labor Act).

**20.** *Humphrey v. Moore, supra, Smith v. Evening News Association*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1961) (Labor Management Relations Act); *Conley v. Gibson, supra* (Railway Labor Act).

**21.** *International Union of United Automobile, Aerospace and Agricultural Implement Workers of America v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966) (Labor Management Relations Act); *International Association of Machinists v. Central Airlines, Inc.*, 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963) (Railway Labor Act).

**22.** *Vaca v. Sipes, supra* (Labor Management Relations Act); *Glover v. St. Louis-San Francisco Railway*, 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969) (Railway Labor Act).

**23.** Both acts recognize exceptions to this rule as well. Where exhaustion would be futile, the requirement is excused. For example, "when the conduct of the employer amounts to a repudiation of those contractual procedures" or when the union has "sole power under the contract to invoke the higher stages of the grievance procedure, and if . . . the employee . . . has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance". *Vaca v. Sipes*, 386 U.S. at 185, 87 S.Ct. at 914 (Labor Management Relations Act); *Glover v. St. Louis-San Francisco Railroad, supra, Conley v. Gibson, supra, Steele v. Louisville & Nashville Railroad, supra* (Railway Labor Act).

**24.** *Vaca v. Sipes, supra, Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960) (Labor Management Relations Act); *Andrews v. Louisville & Nashville Railroad*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972), *Czosek v. O'Mara, supra, Glover v. St. Louis-San Francisco Railway, supra, Conley v. Gibson, supra, Slocum v. Delaware, Lackawanna & Western Railroad*, 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950) (Railway Labor Act).

**25.** *Local 174, Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962) (Labor Management Relations Act); *Brotherhood of Railroad Trainmen v. Chicago River & Indiana Railroad, supra* (Railway Labor Act).

**26.** *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) (Labor Management Relations Act); *Gunther v. San Diego & Arizona Eastern Railway*, 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965) (Railway Labor Act).

**27.** *Boys Market, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970) (Labor Management Relations Act); *Brotherhood of Railroad Trainmen v. Chicago River & Indiana Railroad, supra* (Railway Labor Act). The Court has accommodated the general and literal terms of the anti-injunction provisions of the Norris-LaGuardia Act, 29 U.S.C. § 104, with the purposes and policies of the Labor Management Relations Act and Railway Labor Act.

**28.** *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962) (Labor Management Relations Act); *Denver and Rio Grande Western Railroad v. Brotherhood of Railroad Trainmen*, 387 U.S. 556, 87 S.Ct. 1746, 18 L.Ed.2d 954 (Railway Labor Act).

Another consideration in determining the extent to which *Foust* is determinative of the present issue is the frequency with which the Supreme Court draws analogies between the two acts. In fact, the Court has extracted guidance from cases decided under the Labor Management Relations Act in construing the Railway Labor Act explicitly.[29] For example, in *Brotherhood of Railroad Trainmen, Enterprise Lodge No. 27 v. Toledo, Peoria & Western Railroad*,[30] the Court compared the parties' duty to negotiate in good faith under both acts.[31] In *Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co., supra*, the Court admitted that it had "in the past referred" to the Labor Management Relations Act for "assistance in construing" the Railway Labor Act [32] and did so again there. And in *Glover v. St. Louis-San Francisco Railway, supra*, the Court quoted extensively from *Vaca v. Sipes, supra*, in holding that futility excused exhaustion of internal union procedures in a Railway Labor Act as well as a Labor Management Relations Act case.[33]

■ Detrimental consequences which flow from allowing recovery of punitive damages under the Railway Labor Act would also occur under the Labor Management Relations Act. For one, the delicate accommodation struck by the Court between the individual and collective interests of union members would be undermined. Punitive awards

could impair the financial stability of unions and unsettle [this] careful balance . . . . . Such awards could deplete union treasuries, thereby impairing the effectiveness of unions as collective-bargaining agents. Inflicting this risk on employees, whose welfare depends upon the strength of their union, is simply too great a price for whatever deterrent effect punitive damages may have.[34]

For another, sanctioning imposition of punitive damages would interfere with the necessarily broad discretion which unions exercise in processing grievances, for "[u]nion supervision of employee complaints promotes settlements, avoids processing of frivolous claims, and strengthens the employer's confidence in the union." [35] Also, unions might feel compelled to process frivolous claims or to reject fair settlements in order to avoid later litigation by the employee. These dangers and uncertainties, feared by the Court in *Foust*, are just as likely in the context of the Labor Management Relations Act.

■ Finally and importantly, courts have consistently rejected award of punitive damages in other areas of the Labor Management Relations Act, including unfair labor practices,[36] actions for recovery of tortious damages under § 303,[37] and actions under § 301.[38] At least one court has already denied award of punitive damages within the post-*Foust* context at bar.[39]

**29.** See, for example, *Steele v. Louisville & Nashville Railroad, supra*.

**30.** 321 U.S. 50, 64 S.Ct. 413, 88 L.Ed. 534 (1944).

**31.** *Id*. at 61 n. 18, 64 S.Ct. at 419 n. 18.

**32.** 394 U.S. at 383, 89 S.Ct. at 1117.

**33.** See also *International Brotherhood of Electrical Workers v. Foust, supra*. However, the Acts are not wholly synonymous and cannot be interchanged indiscriminately. See *Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co.*, 394 U.S. at 383, 89 S.Ct. at 1117.

**34.** *International Brotherhood of Electrical Workers v. Foust*, 442 U.S. at 48, 49, 99 S.Ct. at 2126, 2127.

**35.** *International Brotherhood of Electrical Workers v. Foust*, 442 U.S. at 50, 51, 99 S.Ct. at 2127.

**36.** *Republic Steel Corp. v. National Labor Relations Board*, 311 U.S. 7, 61 S.Ct. 77, 85 L.Ed. 6 (1940).

**37.** *Teamsters Local 20 v. Morton*, 377 U.S. 252, 84 S.Ct. 1253, 12 L.Ed.2d 280 (1964).

**38.** *United Shoe Workers v. Brooks Shoe Manufacturing Co.*, 298 F.2d 277 (3d Cir. 1962) (per curiam) (en banc).

**39.** See *Refino v. Feuer Transportation Inc.*, 480 F.Supp. 562, 568 n. 10 (S.D.N.Y.1979) ("[t]hough *Foust* was decided under the Railway Labor Act, the Court unquestionably intended the *Foust* rule to extend to like actions brought under the National Labor Relations Act . . . . as well.") [emphasis added]

■ Assuming for present purposes that Reading Metals wrongfully discharged plaintiff and that the union breached its duty of fair representation by failing properly to pursue plaintiff's grievance, the strong federal labor policy against punishment and the substantial likelihood of the disruptive impact which award of punitive damages invites upon the collective bargaining system compels the conclusion that punitive damages may not be assessed against a union or the employer despite improper discharge or breach of a fair representation duty. Accordingly, the union's motion to strike plaintiff's prayer for punitive damages will be granted.

The Third Circuit Court of Appeals adumbrated these results in several earlier decisions. *Deboles v. Trans World Airlines, Inc.*, 552 F.2d 1005 (3d Cir.), *cert. denied*, 434 U.S. 837, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977), *National Labor Relations Board v. United States Steel Corp.*, 278 F.2d 896 (3d Cir. 1960), *cert. denied*, 366 U.S. 908, 81 S.Ct. 1083, 6 L.Ed.2d 234 (1961), *United Shoe Workers v. Brooks Manufacturing Co., supra.* Cf. *Arnold v. Great Atlantic & Pacific Tea Co.*, 461 F.Supp. 425 (E.D.Pa.1978) (punitive damages are not recoverable in a § 301 action) and *Peterson v. Lehigh Valley District Council*, 453 F.Supp. 735 (E.D.Pa.1978) (to the same effect).