**CONSOLIDATED RAIL CORPORATION**

v.

**DELAWARE AND HUDSON RAILWAY COMPANY and Brotherhood of Locomotive Engineers.**

Civ. A. No. 80–0870.

United States District Court,
E. D. Pennsylvania.

Sept. 26, 1980.

Hermon M. Wells, Philadelphia, Pa., for plaintiff.

William P. Quinn, Philadelphia, Pa., for Delaware & Hudson.

Herbert G. Schick, Philadelphia, Pa., Harold A. Ross, Cleveland, Ohio, for Brotherhood.

## MEMORANDUM

TROUTMAN, District Judge.

Late one afternoon in May 1976 an employee of defendant Delaware and Hudson Railway Company (D & H) operated a train against the current of traffic, the railroad equivalent of driving the wrong way down a one–way street, near Bethlehem, Pennsylvania, on track belonging to plaintiff. One week later D & H and Conrail conducted a joint investigation and concluded that the employee violated an applicable operating rule. Consequently, D & H suspended the employee for forty–five days and Conrail barred him from operating engines over any of its tracks for three years. The employee filed a grievance, which the General Committee of defendant Brotherhood of

Locomotive Engineers (BLE) (the collective bargaining representative for the craft of locomotive engineers with D & H and Conrail) processed through customary procedures without success. The international president of the BLE then assigned an officer to assist the local general chairman in submitting the matter to arbitration for a conclusive determination. *See* Railway Labor Act of 1926, as amended, 45 U.S.C. § 153, First (i). When the parties could not resolve their differences through conferences, BLE requested D & H and Conrail to form a Public Law Board. See 45 U.S.C. § 153, Second. D & H agreed; Conrail did not. BLE then requested the National Mediation Board to appoint a Partisan Member for Conrail so that an agreement to establish a Public Law Board could be consummated. The Board appointed members for both D & H and Conrail. When Conrail indicated that it would not recognize the appointment and would not consider any order issued therefrom valid, BLE asked the Mediation Board to appoint a Procedural Neutral member for the Public Law Board. The Mediation Board obliged and later, upon request by D & H and BLE, also appointed a Merits Neutral. The Public Law Board held a hearing, at which BLE and D & H filed a joint submission questioning Conrail's compliance with uniform railroad operating rules and asserting that Conrail's discipline was tantamount to dismissal and therefore excessive and unwarranted. Attacking the Board's lack of jurisdiction over the matter, Conrail refused to participate. In May 1979 the Procedural Neutral concluded that the Board had jurisdiction, and the following January the Merits Neutral entered an award sustaining the employee's claim for restoration of seniority rights, removal of imposed work restrictions and reimbursement for loss of earnings for the three–year period in question less unemployment compensation benefits received. (The 45–day suspension imposed by D & H was not and is not at issue.) Several weeks later Conrail filed this action to review and set aside the award as null and void and to enjoin defendants from future enforcement of the terms of that award against Conrail. See 45 U.S.C. § 153, First

(q). Both Conrail and BLE now move for summary judgment.

Essentially, Conrail argues that a public law board's jurisdiction to adjust disputes extends only to those which arise in the context of the employment relationship between a carrier and its own employees or between a carrier and a labor organization with which it has an agreement covering the dispute. Since D & H, not Conrail, employed the claimant and since the collective bargaining agreement covering that employment involved D & H and BLE, Conrail argues, the public law board lacked jurisdiction over Conrail.

To continue essential rail transportation provided by a number of insolvent railroads in the northeast quadrant of the United States, the Regional Rail Reorganization Act of 1973, as amended, 45 U.S.C. § 775 *et seq.*, created Conrail in April 1976 and further provided that the United States Railway Association would prepare a Final System Plan by which some of the rail properties of the bankrupt carriers could be offered for acquisition or operation to solvent carriers. The Association proposed that the involved segment of track, owned originally by the Lehigh Valley Railroad, be transferred to Conrail with the D & H to be granted trackage rights over the line. In accordance with this act, the employee had a right to work with D & H or Conrail with the same specified protection and benefits. *See* 45 U.S.C. § 775. Although the claimant in the case at bar opted for employment with D & H, the Act required that he not "be placed in a worse position with respect to compensation, fringe benefits, rules, working conditions, and rights and privileges pertaining thereto". The nature of the obligations imposed upon Conrail by the Act and the protections afforded the employee disallowed any derogation of D & H employees' rights by Conrail. Moreover, BLE acted as collective bargaining representative for the craft of locomotive engineers on both Conrail and D & H and has collective bargaining representative for the craft of locomotive engineers on both Conrail and D & H and had collective bargaining agreements with both. A 1975 agreement between BLE and the National Railway La-

bor Conference, the national bargaining representative for the railroad industry, covered the employees of Conrail and related to health and welfare benefits as well as work rules. By virtue of the reorganization act, these agreements continued in effect subject to specified procedures for change. Thus, agreements existing between the parties called for contract interpretation, *see Brotherhood of Railroad Trainmen v. Howard*, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283 (1952), and the Final System Plan accorded D & H the exclusive right to discipline its employees and to decide whether to honor Conrail's request for removal of an employee from service on a given line.

Another pertinent agreement among the parties also merits attention. In April 1979 Conrail and D & H entered into an agreement setting forth the terms and conditions of D & H's exercise of operating rights over the joint lines. Sections 7.10 and 2.02 thereof provided in pertinent part that "any outstanding disputes between the parties relating to events arising out of the operation of the Joint Lines between April 1, 1976, and [January 1, 1979] shall be settled in accordance with the terms and conditions set forth in this Agreement", which also provided that

> [f]or reasonable cause, either party may request that any employee of the other ... be disciplined or removed from service on the Joint Lines, and at the request of either party, the other party shall hold a hearing and investigation. Both parties shall have a right to participate in any hearing and investigation resulting from such request.

This agreement clearly contemplated retroactive application thereof as well as adjustment of ongoing disputes by the method described therein. Jurisdiction by the Board to resolve differences among the parties inevitably followed. True, Conrail did not employ the involved claimant, but the surrounding circumstances and this agreement between the parties supplied the necessary relationship, whether implied as a mandate by statutory construction or viewed as a corollary incident to their 1979 agreement, and therefore supported jurisdiction by an arbitration board convened under the Railway Labor Act. Establishing three types of compulsory arbitration processes to adjudicate disputes arising out of grievances or interpretations of collective bargaining agreements, the Act created the National Railroad Adjustment Board (NRAB), 45 U.S.C. § 153, First, "special boards of adjustment" (actually private arbitration tribunals with similar responsibilities), 45 U.S.C. § 153, Second, and "public law boards", 45 U.S.C. § 153, Second, all of which exercise jurisdiction over

> *disputes between an employee* or group of employees and a *carrier* or *carriers* growing out of *grievances* or out of the interpretation and applications of agreements concerning rates of pay, *rules* or working conditions ...

45 U.S.C. § 153, First (i) (emphasis added). This language does not *require* an employment relationship as a precondition to jurisdiction. In fact, the Act provides jurisdiction over disputes between an employee and "carrier or *carriers*", which would, of course, involve carriers with whom a particular employee had no employment relationship. The Act also specified that the Board shall have jurisdiction over "[a]ll disputes between ... carrier or carriers interested in the dispute", 45 U.S.C. § 152, Second, and required the Board to "give due notice of all hearings to the employees ... and *carriers* involved in any disputes submitted to them". 45 U.S.C. § 153, First (j). Clearly, these sections recognize the possibility of a situation in which an employee, his employer and a third–party carrier might become embroiled in a single controversy which tripartite arbitration would resolve expeditiously. As a practical matter, this procedure allows prompt and orderly settlement of disputes with all indispensable parties present, *Transportation Communication Employees Union v. Union Pacific Railroad*, 385 U.S. 157, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966), and enhances recognized labor policies of peaceful settlement of industrial differences, *Union Pacific Railroad v. Price*, 360 U.S. 601, 79 S.Ct. 1351, 3 L.Ed.2d 1460 (1959), and self–adjustment by the parties. *Detroit & Toledo Shore Line Railroad v. United Transportation Union*, 396 U.S. 142, 90 S.Ct. 294, 24 L.Ed.2d 325 (1969).

Having found that the Board had jurisdiction, the next inquiry focuses on whether the Board exercised it properly under the circumstances. An award may be overturned for failure by the Board to comply with the requirements of the Railway Labor Act, entry of an award which exceeds matters within the Board's jurisdiction, fraud or corruption by a Board member, 45 U.S.C. § 153, *Union Pacific Railroad v. Sheehan,* 439 U.S. 89, 99 S.Ct. 399, 58 L.Ed. 354 (1978), lack of due process or the absence of any rational basis for the award. *International Brotherhood of Teamsters v. Western Pennsylvania Motor Carriers Association,* 574 F.2d 783 (3d Cir. 1978), *Kotakis v. Elgin J & E Railway,* 520 F.2d 570 (7th Cir.), *cert. denied,* 423 U.S. 1016, 96 S.Ct. 451, 46 L.Ed.2d 389 (1975). *See generally Roberts v. Lehigh & New England Railway,* No. 79–608 (E.D.Pa. October 25, 1979), *aff'd.,* 625 F.2d 1116 (3d Cir. 1980). Conrail argues alternatively that the Board's award lacked a rational basis.

Just as the scope of judicial review of an arbitrator's decision is "narrow in the extreme" within the context of an action brought under the Labor Management Relations Act of 1935, as amended, 29 U.S.C. § 185 *et seq., Amalgamated Meat Cutters and Butcher Workers of North America, Local 195 v. Cross Brothers Meat Packers, Inc.,* 518 F.2d 1113, 1121 (3d Cir. 1973), an award under the Railway Labor Act may be struck only if the interpretation cannot in any rational way

> be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award.

*Ludwig Honold Manufacturing Co. v. Fletcher,* 405 F.2d 1123, 1128 (3d Cir. 1969). *Cf. Dian v. United Steelworkers of America,* 486 F.Supp. 700 (E.D.Pa.1980). Awards under the Railway Labor Act are "final and binding"; findings and orders, "conclusive". 45 U.S.C. § 153, First (m), (p) and (q). This language is "unequivocal". *Brotherhood of Railroad Trainmen v. Chicago, River & Indiana Railroad,* 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957). In the absence of circumstances described above, this Court does not sit as an appellate body and review the merits of an arbitrator's decision. *International Ladies' Garment Workers' Union, Local No. 111 v. DeeVille Blouse Co.,* 486 F.Supp. 1253 (E.D.Pa.1980). In the case at bar the Merits Neutral found that the discipline imposed by Conrail was unreasonably harsh for the violation. The need for an arbitrator to forge a flexible remedy consistent with customs and practices of the shop without unwarranted judicial intrusion requires little elaboration. *See United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Accordingly, BLE's motion for summary judgment will be granted and Conrail's motion will be denied.