526 F.Supp. 1158 (1981)
Nora G. KOLOEDEY, Plaintiff/Petitioner,
v.
MUTUAL BENEFICIAL ASSOCIATION OF RAIL TRANSPORTATION EMPLOYEES, INC., Defendant/Respondent.
Civ. A. No. 80-90.
United States District Court, D. Delaware.
November 24, 1981.
*1159 Bettina C. Ferguson, Wilmington, Del., for plaintiff/petitioner, Nora G. Koloedey.
Thomas Stephen Neuberger, Wilmington, Del., and Sandra A. Girifalco, of Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for defendant/respondent, Mutual Beneficial Ass'n of Rail Transportation Employees, Inc.

MEMORANDUM OPINION
LATCHUM, Chief Judge.
Nora G. Koloedey has petitioned this Court for review of a decision of the National Railroad Adjustment Board (the "Board") dismissing petitioner's grievance against respondent, the Mutual Beneficial Association of Rail Transportation Employees, Inc. ("MBA"), on the ground that the Board lacked jurisdiction over the underlying controversy. Under 45 U.S.C. § 153 First (i), the Board is empowered to resolve disputes between "carriers" and their "employees" as those terms are defined in the Railway Labor Act, 45 U.S.C. § 151. The petitioner argues that the Board erroneously concluded that the MBA was not a "carrier" within the meaning of the Act and that Ms. Koloedey, correspondingly, was not an "employee" of a carrier, and urges the Court to set aside these findings and remand the case to the Board for a determination on the merits. Because there are no material facts in dispute, the parties have now filed cross motions for summary judgment. The Court concludes, for the reasons discussed below, that the decision of the Board is final and binding upon the parties and that the Court is not at liberty to disturb that judgment.
The Railway Labor Act vests exclusive jurisdiction in the National Railroad Adjustment Board to decide so-called "minor disputes" between employees and carriers arising out of grievances or the interpretation or application of collective bargaining agreements.[*] 45 U.S.C. § 153 First (i); Brotherhood of Maintenance, etc. v. St. Johnsbury, etc., 512 F.Supp. 1079, 1083 (D.Vt.1981). By statute, all findings and orders of the Board are final and binding on the parties, 45 U.S.C. § 153 First (m), and a district court may set aside an award only on three narrow grounds: (1) failure of the Board to comply with the provisions of the Railway Labor Act; (2) failure of the Board's order to conform, or confine itself, to matters within the scope of the Board's jurisdiction; or (3) fraud or corruption by a member of the Board making the order. 45 U.S.C. § 153 First (q). In addition, some courts have crafted a fourth alternative ground for review of a Board decision: (4) lack of due process in the Board proceedings. See O'Neill v. Public Law Board No. 550, 581 F.2d 692, 694 (C.A. 7, 1978); Consolidated Rail Corp. v. Delaware and *1160 Hudson Railway Co., 499 F.Supp. 967, 971 (E.D.Pa.1980). The scope of judicial review of Board decisions has been characterized by many courts as "among the narrowest known to the law." United Steelworkers of America v. Union R. Co., 648 F.2d 905, 910 (C.A. 3, 1981); International Ass'n of Machinists & Aerospace Workers v. Southern Pacific Transportation Co., 626 F.2d 715, 717 (C.A. 9, 1980); Diamond v. Terminal Railway Alabama State Docks, 421 F.2d 228, 233 (C.A. 5, 1970).
Petitioner essentially contends that the Board erred in determining that the MBA was not a "carrier" and that the Court should reexamine this question for itself. The Court has no authority, however, to relitigate issues presented to and resolved by the Board, see Merchants Despatch, etc. v. System Fed., etc., 447 F.Supp. 799, 802 (N.D.Ill.1978), and petitioner has failed to show that any of the limited exceptions permitting judicial review are available here. Goclowski v. Penn Central Trans. Co., 516 F.Supp. 1276, 1279 (W.D.Pa. 1981); Young v. Southern Pac. Transp. Co., 420 F.Supp. 386, 389 (N.D.Cal.1976).
This conclusion is compelled by Union Pacific R. Co. v. Sheehan, 439 U.S. 89, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978), a closely analogous case in which the Supreme Court rejected a similar attempt to obtain judicial reexamination of a jurisdictional issue decided by the Board. In that case, a railroad employee filed an action in state court against his employer alleging wrongful discharge and denial of a fair hearing. While this suit was pending, the Supreme Court ruled in another case that a railroad employee claiming a violation of a collective bargaining agreement must submit his dispute to the National Railroad Adjustment Board under the provisions of the Railway Labor Act. The employee thereafter abandoned his state court suit and instituted proceedings before the Board, but the Board dismissed the claim because the complainant had failed to pursue his administrative remedies within the time limits prescribed by the collective bargaining agreement. Id. at 89, 99 S.Ct. at 399.
The employee then brought suit in federal court under 45 U.S.C. § 153 First (q), arguing that the time limitations of the collective bargaining agreement were tolled during the pendency of his state court action and that the Board should be directed to hear and decide his claim on the merits. The district court found that there was no statutory basis on which to grant the relief sought and awarded summary judgment to the employer. The Court of Appeals for the Tenth Circuit held, however, that the Board's failure to address the merits of the employee's claim deprived him of an opportunity to be heard, in violation of the due process clause, and remanded the case to the Board. In its ruling, the court took note of the statutory constraints placed on judicial review of Board actions, but found that "purely legal issues," which did not require the particular expertise of the Board, could appropriately be reexamined by a reviewing court. Id. at 90-91, 99 S.Ct. at 400.
In a per curiam opinion sharply critical of the Tenth Circuit's action, the Supreme Court reversed. The Court observed:
If the Court of Appeals' remand was based on its view that the Adjustment Board had failed to consider respondent's equitable tolling argument, the court was simply mistaken. The record shows that respondent tendered the tolling claim to the Adjustment Board, which considered it and explicitly rejected it. If, on the other hand, the Court of Appeals intended to reverse the Adjustment Board's rejection of respondent's equitable tolling argument, the court exceeded the scope of its jurisdiction to review decisions of the Adjustment Board.
Judicial review of Adjustment Board orders is limited to three specific grounds: (1) failure of the Adjustment Board to comply with the requirements of the Railway Labor Act; (2) failure of the Adjustment Board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption. 45 U.S.C. § 153 First (q). Only upon one or more of these bases may a court set *1161 aside an order of the Adjustment Board.... There is no suggestion of fraud or corruption here. And the Adjustment Board certainly was acting within its jurisdiction and in conformity with the requirements of the Act by determining the question of whether the time limitation of the governing collective-bargaining agreement was tolled by the filing of respondent's state-court action. Respondent does not contend otherwise. Accordingly, we agree with the District Court that respondent simply failed to demonstrate the existence of any of the grounds for review set forth in § 153 First (q).
Characterizing the issue presented as one of law, as the Court of Appeals seemed to do here, does not alter the availability or scope of judicial review: The dispositive question is whether the party's objections to the Adjustment Board's decision fall within any of the three limited categories of review provided for in the Railway Labor Act. Section 153 First (q) unequivocally states that the "findings and order of the [Adjustment Board] shall be conclusive on the parties" and may be set aside only for the three reasons specified therein. We have time and again emphasized that this statutory language means just what it says.... The determination by the Adjustment Board that respondent had failed to file his appeal within the time limits prescribed by the governing collective-bargaining agreement is one which falls within the above-quoted language precluding judicial review.
Id. at 92-94, 99 S.Ct. at 401.
The Union Pacific case would appear to foreclose the relief requested by petitioner. As in that case, there has been no suggestion of fraud or corruption here. Similarly, the Board certainly was acting within its jurisdiction and in conformity with the requirements of the Railway Labor Act by determining the question of whether the MBA could qualify as a "carrier," as that term is defined in 45 U.S.C. § 151. Accordingly, petitioner has simply failed to demonstrate the existence of any of the statutory grounds for judicial review necessary to prevail in this Court.
The Court recognizes that several courts have reviewed Board decisions under a standard which requires reversal where the order is "without foundation in reason or fact." See e. g., Brotherhood of Railway, etc. v. Kansas City Terminal Ry. Co., 587 F.2d 903, 906 (C.A. 8, 1978), cert. denied, 441 U.S. 907, 99 S.Ct. 1997, 60 L.Ed.2d 376 (1979); Eastern Air Lines v. Transport Workers Union, 580 F.2d 169, 172 (C.A. 5, 1978); Diamond v. Terminal Railway Alabama State Docks, 421 F.2d 228, 233 (C.A. 5, 1969). This approach finds some support in the Senate Labor and Public Welfare Committee Report which accompanied the 1966 amendments to the Railway Labor Act. That report reads in pertinent part:
The committee gave consideration to a proposal that the bill be amended to include as a ground for setting aside an award "arbitrariness or capriciousness" on the part of the Board. The committee declined to adopt such an amendment out of concern that such a provision might be regarded as an invitation to the courts to treat any award with which the court disagreed as being arbitrary or capricious. This was done on the assumption that a Federal court would have the power to decline to enforce an award which was actually and indisputably without foundation in reason or fact, and the committee intends that, under this bill, the courts will have that power.
S.Rep.No.1201, 89th Cong., 2d Sess., reprinted in [1966] U.S.Code, Cong. & Ad.News 2285, 2287.
Even applying this standard of review to the Board's order, however, would not compel a decision favorable to the petitioner here. Under 45 U.S.C. § 151, a "carrier" is defined as inter alia:
any company which is directly or indirectly owned or controlled by or under common control with any carrier by railroad and which operates any equipment or facilities or performs any service (other than trucking service) in connection with *1162 the transportation, receipt, delivery, elevation, transfer in transit, refrigeration or icing, storage, and handling of property transported by railroad, and any receiver, trustee, or other individual or body, judicial or otherwise, when in the possession of the business of any such "carrier."
It is undisputed that the MBA is a fraternal benefit society which sells legal reserve life insurance to qualified railroad employees. (Docket Item ["D.I."] 22.) According to its certificate of incorporation, the MBA's purpose is to "create, maintain, invest, and disburse a fund or funds for the use and benefit of the members of the corporation in order to provide for financial aid and indemnity to maimed, injured, sick or superannuated" members and "to provide for aid and indemnity to beneficiaries" of deceased members. (D.I. 9, Ex. A.) The MBA is financially dependent solely on premium payments from its railroad employee membership. (D.I. 22.) The MBA's officers and directors, moreover, are chosen by its members and all decisionmaking power is vested in these parties. No railroad company has any ownership or equity interest in, or exercises any managerial control over, the MBA. (Id.).
Despite these uncontroverted facts, petitioner argues that the MBA is a "carrier" for the following reasons: (1) MBA employees receive benefits under the Railroad Retirement Act and Railroad Unemployment Insurance Act; (2) MBA employees are entitled to reduced rates on Conrail trains; (3) at the time of petitioner's employment, MBA received the free use of office space from Conrail and now pays Amtrak a mere $10.00 per month for the same space; and (4) paychecks for MBA's employees are issued by Conrail which is reimbursed in full by the MBA. (D.I. 26, 9 & 10.) Although these factors arguably could represent some indicia of control over the MBA by Conrail or Amtrak, they are in and of themselves insufficient to warrant reversal of the Board's order. The Court cannot sit as an appellate body and substitute its judgment for that of the Board. See Consolidated Rail Corp. v. Delaware & Hudson Ry., 499 F.Supp. 967, 971 (E.D.Pa. 1980). In the absence of circumstances indicating that the Board's order is indisputedly baseless and without foundation in reason or fact, the Court is precluded from granting the petitioner relief, even though the Court itself may sincerely believe that the Board did in fact err. Here, the Board explicitly considered the foregoing arguments and decided, nonetheless, that the MBA was not a "carrier" within the meaning of the Railway Labor Act. The Court cannot conclude that this judgment is manifestly without support in the record.
For the reasons discussed in this memorandum opinion, the MBA's motion for summary judgment will be granted and petitioner's motion will be denied. An order will be entered in accordance with this memorandum opinion.
NOTES
[*] Under the Railway Labor Act, a "major dispute" is one arising out of the negotiation or revision of collective bargaining agreements covering rates of pay, rules, or working conditions. Baker v. United Transportation Union, 455 F.2d 149, 154 n.11 (C.A. 3, 1971). Major disputes are first mediated under the auspices of the National Mediation Board. If mediation fails, the controversy may be submitted by agreement to a board of arbitration, and, if necessary, to the President, who may convene an emergency board to investigate and report on the matter. 45 U.S.C. §§ 156-160; Elgin, J. & E. Ry. Co. v. Burley, 325 U.S. 711, 725, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945). Minor disputes, on the other hand, represent less substantial differences arising out of existing collective bargaining agreements, policies or other actions incidental to the employment relationship. Elgin, J. & E. Ry. Co. v. Burley, supra, 325 U.S. at 724, 65 S.Ct. at 1290. Unlike major disputes, they do not concern the acquisition of future rights for large classes of persons, but involve the interpretation or application in specific situations of rights already vested. Id. at 723, 65 S.Ct. at 1289.